## Herman v. Somers et al., Appellants.

*Vendor and vendee—Marketable title—Contract.*

In equity a marketable title is one in which there is no doubt involved, either as to matter of law or fact. Every title is doubtful which invites or exposes the party holding it to litigation. If there be a color of outstanding title which may prove substantial, though there is not enough in evidence to enable the chancellor to say so, a purchaser will not be held to take it and encounter the hazard of litigation.

A covenant in a contract of sale of land that the property is " to be free from all liens and incumbrances," and the hand money is " to be refunded if title should not prove good on examination of record, or cannot be made good," is equivalent to a covenant to convey a good marketable title.

A vendee of land will not be required to complete his contract of purchase where it appears that the vendor bought the land at sheriff's sale, and affidavits in support of exceptions to the acknowledgment of the sheriff's deed averred that the vendor's husband had fraudulently procured the sale to defeat the rights of the real owners of the land who had recovered a verdict and judgment in ejectment.

Argued Oct. 26, 1893.  Appeal, No. 112, Oct. T., 1893, by defendants, Charles Somers et al., from judgment of C. P. No. 2, Allegheny Co., July T., 1891, No. 177, on verdict for plaintiff, C. M. Herman.  Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Appeal from justice of peace.  Before MAGEE, J.

At the trial, it appeared that plaintiff claimed to recover hand money paid defendants as agents of James and Ellen Leech on account of a contract to purchase real estate of James and Ellen Leech.  John H. Kerr, Esq., an attorney at law, and an expert on questions of title, testified that he had examined the title of the land in question, and had come to the conclusion that it was not good ; that James Leech never had any legal title to the property ; that Mary Johnston, from whose administrator he had purchased the same in 1882, had only a life estate, which ended at her death ; that Mary Johnston's first husband was Robert Calhoun, who died, seised of the land, intestate, leaving a son who afterward died, from whom said Mary Johnston is alleged to have inherited.  Ejectment was brought against James Leech in 1884 by the collateral heirs of Robert Calhoun, on which judgment for the land and six cents damages were entered in default of appearance ; which judgment was afterward and during the pendency of the partition proceeding opened, because defendant alleged that he had not been served.  In December, 1885, Frank Calhoun, one of the ejectment plaintiffs, went into the orphans' court, and petitioned for partition, and proceeded in the same to sale, Robert Smith and Edward Kelly being the purchasers. This title is still outstanding.  On March 8, 1888, after the sale under the partition proceeding, the city of Allegheny filed a lien against James Leech for the cost of a sewer on Ward street, which was proceeded on to sale on Sept. 7, 1888, when the land was bought by Ellen Leech, the wife of James Leech, for the sum of $325, and after the costs had been appropriated the balance was distributed to James Leech, the husband. There is nothing in evidence showing that the title of Robert Smith and Edward Kelly was ever registered or recorded.  Mr. Kerr further testified: " In the sheriff's sale on the municipal lien filed by Allegheny City, after the sale to Ellen Leech, there

are objections to the acknowledgment of the deed supported by affidavit filed, there on the face of the title and in the line of the title.  They set forth that this very sale by Allegheny City on this municipal lien was procured by James Leech with fraudulent intent, by collusion with the city authorities, surreptitiously and with fraudulent intent to cut up the title of the real owners, viz. : the plaintiffs in the ejectment then pending, and the title of the vendees of the trustee appointed by the orphans' court to make a sale in partition, and that James Leech furnished the money to his own wife to purchase the property."  Mr. Kerr also testified that the affidavits showed that Mrs. Leech had " full knowledge of the ejectment and all the proceedings connected therewith. . . . I merely say that the allegations of such a thing is enough to put the purchaser on warning that he may be buying a lawsuit, and under the decisions of our courts a purchaser is entitled to not only a good, but a marketable title."

The court charged in part as follows :

" [Under the evidence and the presentation of the facts, which were not in dispute, taking into account the difference that there is in the opinions of attorneys, the title is at least open to litigation (and that question might have to go to the Supreme Court to determine whether I am right or not), and that shows in my judgment that it is not such a title as is regarded in law as a marketable title, which a man is bound to take when he covenants  for a good title, which in my judgment means a marketable title ; not an absolutely perfect title, but a marketable title, free from any reasonable ground of controversy connected with it.   Laymen or men not in the profession of the law, could not say whether a title was good or not, but must get the opinions of men competent to decide those things, and from the evidence it seems to me that the questions here subject the title to such reasonable doubt or liability to suits hereafter by persons whose title has not been passed away, except it be by the sale on the municipal lien, and I am not prepared to say that this is conclusive of the title, and will therefore give you my answers  upon the plaintiff's points.] " [7]

Plaintiff's points were as follows :

" 1. Plaintiff in this case under the contract of sale was not bound to accept anything but a marketable title."  Affirmed. [1]

" 2. And a title that is doubtful either in matter of law or fact, or might involve the purchaser in litigation, is not such a marketable title." Affirmed. [2]

" 3. And a purchaser is not bound to accept a title that might involve him in litigation, and the trouble and expense thereof, even though he might ultimately succeed in sustaining it." Affirmed. [3]

" 4. Under all the law and evidence in this case the title to the property in question was not marketable and the verdict must be for the plaintiff." Affirmed. [4]

Defendants' points were as follows:

" 1. Under the admissions, deeds, records and evidence offered in this case, the title to the property held by Ellen Leech was good, and the verdict of the jury must be for defendants." Refused. [5]

2. Request for binding instructions. Refused. [6]

Binding instructions were given for plaintiff.

Verdict and judgment for plaintiff. Defendants appealed.

*Errors assigned* were (1–6) instructions, quoting them.

*J. Chas. Dicken* for appellants, cited: Emrick v. Dicken, 92 Pa. 78; White v. Ballantine, 96 Pa. 186; Hering v. Chambers, 103 Pa. 172; Registration act of April 2, 1869, P. L. 644; Sewer acts of Allegheny City of April 1, 1868, P. L. 550; March 26, 1867, P. L. 551, §§ 13, 14 and 15.

*Chas. W. Dahlinger*, for appellee, cited: Wharton v. Hudson, 3 Rawle, 390; Roberts's Ap., 39 Pa. 417; McWilliams v. Ross, 46 Pa. 371; Johns v. Tiers, 114 Pa. 611; Swayne v. Lyon, 67 Pa. 439; Ludwick v. Huntzinger, 5 W. & S. 51; Bumberger v. Clippinger, 5 W. & S. 311; Colwell v. Hamilton, 10 Watts, 413; Speakman v. Forepaugh, 44 Pa. 363; Dalzell v. Crawford, 1 Pars. 45; Nicol v. Carr, 35 Pa. 382; Warville on Vendors, § 5, p. 50; Sugden on Vendors, p. 386, and p. 577, § 2.

PER CURIAM, November 13, 1893:

According to express terms of the contract of sale, the property was " to be free from all liens and encumbrances," and the hand money was " to be refunded if title should not prove good on examination of records, or cannot be made good."

This is equivalent to a covenant to convey a good marketable title. In equity a marketable title is one in which there is no doubt involved, either as to matter of law or fact: Dalzell v. Crawford, 1 Parsons, Equity Cases, 45; Nicol v. Carr, 35 Pa. 382; Swayne v. Lyon, 67 Pa. 439. In Speakman v. Forepaugh, 44 Pa. 373, it was said : " Every title is doubtful which invites or exposes the party holding it to litigation. If there be color of outstanding title which may prove substantial—though there is not enough in evidence to enable the chancellor to say so— a purchaser will not be held to take it and encounter the hazard of litigation." The testimony in this case is quite sufficient to bring it within the principle recognized in these cases, and hence there was no error in affirming plaintiff's first, second and third points, or in charging the jury as requested in his fourth point, that, under the law and evidence, the title to the property in question was not marketable and their verdict must be for the plaintiff; nor was there any error in refusing to affirm defendants' first and second points, or in charging the jury as complained of in the seventh specification. Neither of the specifications of error is sustained.

Judgment affirmed.